IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DOMMEL PROPERTIES, LLC, | : | CIVIL ACTION NO. 1:11-CV-02316 |
| LAND OF BELIEVE FARM, INC., | : | |
| WILLIAM J. DOMMEL, and | : | |
| ROBERT W. DOMMEL, | : | |
| | : | |
| Plaintiffs, | : | (Chief Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| JONESTOWN BANK AND TRUST | : | |
| COMPANY, *now known as* JBT, | : | |
| LEBANON COUNTY TAX CLAIM | : | |
| BUREAU, and SALLIE A. NEUIN, | : | |
| | : | |
| Defendants | : | |

**MEMORANDUM**

Presently before the court in the above-captioned matter is a motion to quash and for a protective order (Doc. 77), filed by plaintiffs William Dommel, Robert Dommel, Land of Believe Farm, Inc. (the "Farm"), and Dommel Properties, Inc. ("Dommel Properties"). Plaintiffs seek protection from a subpoena in which defendant Jonestown Bank and Trust (the "Bank") demands that Denise McHenry appear for a deposition and produce documents evidencing division of assets from her marriage and divorce from plaintiff William Dommel. (Doc. 81-1, Ex. E). For the reasons that follow, the court will deny plaintiffs' motion to quash and for a protective order (Doc. 77).

**I.   Background**

Plaintiffs William Dommel and his late father, Robert Dommel, engaged in the horse-breeding trade through their businesses, the Farm and Dommel

Properties. (Doc. 1 at 3). Plaintiffs filed the Complaint (Doc. 1) against the Bank and defendant Sallie A. Neuin, Director of the Lebanon County Tax Claim Bureau (the "TCB") and a member of the Board of Directors of the Bank, for claims arising from three promissory notes plaintiffs executed with the Bank, secured by two farms and hunting property. (Id. at 3-5). Soon after execution of the notes, plaintiffs expressed concern to the Bank about the financially precarious position of their businesses. (Id. at 6). Plaintiffs allege that the Bank encouraged them to continue construction on their farm and that, despite confessing judgment on the notes in October 2008, the Bank represented that it would work with plaintiffs to resolve the debt and would not execute upon the confessed judgments. (Id. at 6-7). Plaintiffs allege that the Bank subsequently executed on the judgments and, after chilling bidding at plaintiffs' sale, the Bank purchased the first farm at a sheriff's sale for costs only, failing to credit the market value of the farm against plaintiffs' debt. (Id. at 8-9).

Plaintiffs further allege that, through her positions at the Bank and the TCB, Ms. Neuin became aware of the value of the properties and plaintiffs' borrowing history with the Bank, and initiated a tax sale for plaintiffs' other farm. (Id. at 9-10). Contrary to the statements of Bank representatives that the Bank had no interest in purchasing the second farm, plaintiffs later discovered that the Bank purchased the second farm at the tax sale. (Id. at 10-11).

Plaintiffs brought eleven claims against the Bank, Ms. Neuin, and the TCB due to the decline of their businesses and loss of their properties. (Id.) Pursuant to

2

the court's Order (Doc. 64), on March 19, 2013, the court dismissed all claims against the TCB and some of the claims against the Bank and Ms. Neuin.  The remaining claims against the Bank are governed by state law and are as follows: intentional interference with contract (Count V), fraud (Count VII), negligence (Count VIII), promissory estoppel (Count X), and deepening insolvency (Count XI).  The remaining claims against Ms. Neuin are as follows: violation of substantive due process rights under 42 U.S.C. § 1983 (Count I), intentional interference with contract (Count V), and conversion (Count VI).

On June 26, 2013, the Bank sent plaintiffs' counsel Notices of Deposition and Subpoenas, including a copy of a subpoena addressed to Ms. Denise McHenry. (Doc. 78-1, Ex. A).  Ms. McHenry is the former wife of plaintiff William Dommel, and their divorce was finalized on July 22, 2011.  (Doc. 81-1, Ex. A).  On July 18, 2013, the Bank served Ms. McHenry with the subpoena.  (Doc. 81-1, Ex. E).  The subpoena sought the deposition testimony of Ms. McHenry on August 1, 2013, as well as the production of "[a]ny and all documents showing or evidencing the division of property with respect to your marriage and divorce from William Dommel including, without limitation, horses and equipment."  (Id.)

Plaintiffs filed the instant motion on July 19, 2013.  (Doc. 77).  Plaintiffs move to quash the subpoena pursuant to Federal Rule of Civil Procedure 45 on the grounds that: (1) the subpoena is facially invalid; (2) the subpoena requires disclosure of confidential information protected by spousal privilege, including the privilege not to testify against one's spouse and the privilege not to testify about

3

confidential communications between spouses; and (3) the subpoena is overly broad and unduly burdensome, requiring the issuance of a protective order. (Doc. 78). The Bank opposes the motion and argues that Ms. McHenry's testimony and documents regarding the business operations and division of the Dommels' assets are relevant and material to its affirmative defense that the failure of plaintiffs' horse-breeding business was not due to the Bank's actions as plaintiffs allege, but instead was due to the departure of Ms. McHenry, who had the knowledge and expertise to run the business. (Doc. 81). This issue is fully briefed and ripe for disposition.

## II. <u>Discussion</u>

The Federal Rules of Civil Procedure allow for the discovery of "any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). Such relevant evidence need not be admissible as long as it "appears reasonably calculated to lead to the discovery of admissible evidence." <u>Id.</u> Federal Rule of Civil Procedure 45 sets forth the procedures through which a party may seek discovery from a nonparty. Plaintiffs move to quash the subpoena pursuant to Rule 45 on the grounds that: (1) the subpoena is facially defective; (2) the subpoena requires disclosure of confidential information protected by spousal privilege under Pennsylvania law; and (3) the subpoena is overly broad and unduly burdensome, and further requests the issuance of a protective order. (Doc. 78). The court shall address each issue in turn.

### A. Facially Valid

Plaintiffs assert that the subpoena is facially invalid because neither the Clerk of the Court nor the Bank's attorney signed the subpoena. (Doc. 78 at 7). Federal Rule of Civil Procedure 45 establishes that a valid subpoena may be signed and issued either by the Clerk of the Court or an attorney as an officer of the court. FED. R. CIV. P. 45(a)(3). The Bank's attorney, Stephanie DiVittore, Esq. of the law firm Rhoads & Sinon LLP, issued and signed the subpoena as an officer of the court and served Ms. McHenry on July 18, 2013. (Doc. 81, Ex. E). The subpoena is therefore facially valid on this basis.

Plaintiffs further allege that the Bank did not comply with the notice requirement of Rule 45(b)(1) because Plaintiffs only received an unsigned version of the subpoena on June 26, 2013, prior to service of the subpoena on Ms. McHenry, and never received a copy of the final subpoena.[1] (Doc. 78-1, Ex. A; Doc. 82 at 7-8). Rule 45(b)(1) requires the party seeking production of documents from a nonparty to serve notice on all other parties. FED. R. CIV. P. 45(b)(1). The commentary to the Federal Rules of Civil Procedure indicates that a subpoena served as notice on all other parties

---

[1] Plaintiffs raise a new argument in their reply brief that the subpoena of Ms. McHenry is also facially invalid because it was not served with the appropriate witness fees as required by Rule 45(b)(1). (Doc. 82 at 8). Arguments raised for the first time in a reply brief are generally waived. Fairness requires that nonmovants have the opportunity to respond to any arguments presented by the movant. Tristate HVAC Equipment, LLP v. Big Belly Solar, Inc., 752 F. Supp. 2d 517, 529 n.8 (E.D. Pa. 2010); see United States v. Medeiros, 710 F. Supp. 106, 110 (M.D. Pa. 1989) ("It is improper for a party to present a new argument in his or her reply brief."). For this reason, the court deems this argument waived and declines to consider it.

5

to an action should detail the essentials of the directed production in order for any interested party to attend at the time and place of the discovery, review or object to the documents, and otherwise monitor the proceedings to protect their own interests. FED. R. CIV. P. 45 cmt. C45-6. The only difference between the unsigned subpoena Plaintiffs received and the subpoena served upon Ms. McHenry is the signature of Ms. DiVittore as an officer of the court. Both versions of the subpoena contain the details of the document request and time and place of appearance for the deposition. The court concludes that the unsigned subpoena plaintiffs received was sufficient notice under Rule 45(b)(1) and the subpoena is valid.

**B.     Spousal Privilege**

Plaintiffs further seek to quash the subpoena served upon Ms. McHenry on the basis that the information sought from Ms. McHenry is protected by spousal privilege. (Doc. 78 at 2-5). Federal Rule of Civil Procedure 45 states that the court must quash or modify a subpoena that requires disclosure of privileged information if no exception or waiver is applicable. FED. R. CIV. P. 45(c)(3)(A)(iii). In civil actions, Pennsylvania law[2] recognizes two types of spousal privilege: the privilege not to provide adverse testimony against one's spouse, see 42 PA. CONS. STAT. § 5924, and the privilege not to testify about confidential communications between spouses, see 42 PA. CONS. STAT. §

---

[2] Under the Federal Rules of Evidence, state privilege laws are controlling when state law supplies the rule of decision with respect to a claim or defense. FED. R. EVID. 501. In the case *sub judice*, plaintiffs' remaining claims against the Bank are state law claims and, therefore, Pennsylvania privilege law shall govern the court's decision.

6

5923. For the reasons explained below, the court concludes that neither the privilege against adverse testimony nor the privilege protecting confidential communications provides a basis to quash the subpoena served upon Ms. McHenry.

### i. Adverse Testimony

Plaintiffs argue to extend the privilege against adverse testimony beyond marriage and divorce to cover all matters arising during the course of the marriage. (Doc. 82 at 2). Under Pennsylvania law, the adverse testimony privilege states that "[i]n a civil matter neither husband nor wife shall be competent or permitted to testify against each other." 42 PA. CONS. STAT. § 5924(a). It is well-established, however, that the privilege applies only during the marriage and does not apply once the marriage ceases to exist. See Commonwealth v. Borris, 372 A.2d 451, 453-54 (Pa. Super Ct. 1977) (holding that there is no disqualification for adverse testimony after the dissolution of marriage, but the disqualification for communications of a confidential nature may still apply); Stewart v. F.A. N. Co., 65 Pa. Super. 195 (Pa. Super. Ct. 1916).

Plaintiffs point to Commonwealth v. Valle-Velez, 995 A.2d 1264 (Pa. Super. Ct. 2010), in support of the contention that the adverse testimony privilege's purpose of maintaining marital harmony continues upon divorce. (Doc. 82 at 2). In Valle-Velez, however, the couple had separated and initiated divorce proceedings, but were not yet legally divorced. Valle-Velez, 995 A.2d at 1269 (stating that the privilege still served to maintain marital harmony where the couple was not yet divorced). It is clearly distinguishable from this case where the divorce of Mr. William Dommel and Ms.

McHenry was finalized on July 22, 2011. (Doc. 81-1, Ex. A). The adverse testimony privilege, therefore, does not apply, and Ms. McHenry may testify against Mr. William Dommel.

### ii. Confidential Communications

The confidential communications privilege provides that "in a civil matter neither husband nor wife shall be competent or permitted to testify to confidential communications made by one to the other, unless this privilege is waived upon the trial." 42 PA. CONS. STAT. § 5923. A privileged confidential communication made between husband and wife outlasts divorce and even death. Hunter v. Hunter, 83 A.2d 401, 403 (Pa. Super. Ct. 1951). Only the spouse asserting the privilege may waive the confidential communications privilege. Commonwealth v. Savage, 695 A.2d 820, 823 (Pa. Super. Ct. 1997).

To determine whether Mr. William Dommel may assert privilege for confidential communications, the court must address three issues: (1) whether the Bank's subpoena seeks information that qualifies as confidential communications; (2) whether the confidential communications privilege applies to business or property-related matters; and (3) whether Mr. William Dommel waived the confidential communications privilege through his own testimony and divorce proceedings in the public record. The court will address each issue below in turn.

### a. *Qualification as Confidential Communication*

In Pennsylvania, the application of the confidential communications privilege depends upon the nature and character of a particular communication and the circumstances under which it was made. Hunter, 83 A.2d at 403. In order to qualify as a confidential communication, the information must be made in confidence and with the intention that it not be disclosed. Savage, 695 A.2d at 823; Commonwealth v. Dubin, 581 A.2d 944, 946 (Pa. Super. Ct. 1990) ("To be protected as a confidential communication, knowledge must be gained through the marital relationship and in the confidence which that relationship inspires.").

Plaintiffs assert that the Bank's subpoena for documents regarding the disposition of marital property is explicitly seeking confidential communications between husband and wife. (Doc. 82 at 3). The court agrees with plaintiffs that the issue of marriage and divorce is a sensitive subject, but unlike cases where the communications are made based on the trust of the marital relationship, Mr. William Dommel and Ms. McHenry created the documents related to the division of assets in divorce proceedings and, therefore, were not communications made in confidence between spouses.

Moreover, in response to the court's request (which occurred during the July 30, 2013 conference call), the Bank clarifies that it seeks information about the operation and ownership of plaintiffs' horse-breeding business, which was affected by the division of Mr. William Dommel and Ms. McHenry's assets. (Doc. 81 at 7-8).

9

In similar cases, Pennsylvania state courts have rejected claims of privilege over business and financial information because such information is neither confidential or a communication between spouses. When the requested information evidences business transactions with third parties, such information is not a direct communication between the spouses. See Dubin, 581 A.2d at 947 (holding, under a similar privilege statute for criminal actions, that bank records, tax returns, and other financial information were not confidential communications between spouses and only evidenced business transactions with third persons); Huffman v. Simmons, 200 A. 274, 278 (Pa. Super Ct. 1938) (stating that a spouse may testify to facts, relating to the other spouse's transactions, which came to her knowledge apart from confidential communications).

The Bank does not seek information about Mr. William Dommel and Ms. McHenry's marriage and relationship, but rather the details of the business they ran together until their divorce in 2011, including background and experience in horse-breeding, responsibilities in the horse-breeding business, location of financial books and records, the current status of any assets for the horse-breeding business, and breeder's awards. (Doc. 81 at 8). Such details cannot be considered communications between spouses because Ms. McHenry gained the information regarding the plaintiffs' businesses from her own participation. Furthermore, related documentation would only evidence business transactions with third parties. The court concludes that such financial and business information is not a

confidential communication between spouses and the privilege, therefore, does not apply.

### b. *Business or Property Matters*

To the extent that any information falling within the ambit of the subpoena would include confidential communications between spouses, the Bank asserts that such privilege would not cover business or property matters discussed between Mr. William Dommel and Ms. McHenry. As both parties correctly point out, the privilege for confidential communications generally excludes knowledge or communications between spouses relating to matters of business or property in the absence of contrary indications. Commonwealth v. Darush, 420 A.2d 1071, 1076 (Pa. Super. Ct. 1980); Stewart, 65 Pa. Super. at 201-02 (finding that confidential communications privilege does not include ordinary business transactions).

Plaintiffs argue that the Bank's subpoena calls for inherently confidential communications because the subject of the communications is the marital relationship and its termination. (Doc. 82 at 5-6). In Darush, the court permitted the testimony of a party's former wife related to financial difficulties of his business because she was the bookkeeper of the business. Darush, 420 A.2d at 1075-76. The court held that the confidential communications privilege did not cover knowledge she gained in that role because there was no indication such knowledge was meant to be confidential. Id. at 1076 (stating that spousal privilege does not extend to all ordinary daily exchanges between spouses).

11

Similarly, in this case, the information at issue directly relates to Ms. McHenry's admitted role in plaintiffs' horse-breeding business and the subsequent financial difficulties that gave rise to this action. The record is devoid of any evidence that Mr. William Dommel and Ms. McHenry intended for the knowledge Ms. McHenry gained in her role in the family business to be confidential, particularly when the parties fought over business assets in divorce proceedings. The court concludes that the confidential communications privilege, therefore, does not protect communications between Mr. William Dommel and Ms. McHenry regarding the jointly-operated horse-breeding business and related property.

        c.      *Waiver of Privilege*

To the extent that the confidential communications privilege applies, the Bank argues that Mr. William Dommel waived it for communications related to Ms. McHenry's role and operation of the business and property. The Bank asserts that Mr. Dommel waived the privilege by offering testimony on the same issues in his deposition. (Doc. 81 at 10-11). The parties have the court at a disadvantage because Mr. Dommel's deposition is not a matter of record.

This omission is not fatal to the court's consideration of the waiver argument, however, because Mr. Dommel disclosed Ms. McHenry's role in the family business in the public record through divorce proceedings. For this reason, the court finds that Mr. Dommel waived the spousal privilege. Communications that are intended to be disclosed to third parties are generally not protected by privilege because there would be no reasonable expectation of confidentiality in such

12

communications.  Barrett v. Vojtas, 182 F.R.D. 177, 179 (W.D. Pa. 1998); Commonwealth. v. Hunter, 60 A.3d 156, 159-60 (Pa. Super. Ct. 2013) (finding that defendant could not have reasonably expected her texts to her husband to remain confidential where she testified that the texts had been the subject of a county child welfare agency hearing that likely contained relevant material for the current proceedings).

In the divorce proceedings, William J. Dommel filed a Petition for Special Relief expressly regarding the operation and financial status of plaintiffs' horse-breeding business.  (Doc. 81-1, Ex. C).  Mr. Dommel stated that Ms. McHenry retained all of the breeder's awards, which was an integral part of the business's income, and removed all of the office equipment and horse registrations, which negatively impacted the operation of the business.  (Id.)  Morever, Mr. Dommel alleged that, as a result of Ms. McHenry's actions, the business was unable to pay its bills and the Bank commenced foreclosure proceedings.  (Id.)  Based upon these allegations in the public record, it is clear that Mr. Dommel waived any spousal privilege with regards to Ms. McHenry's role in and the operation of plaintiffs' business.  He simply did not have a reasonable expectation of confidentiality in court filings made on the record, which directly placed the operation of the business and division of assets at issue.

### C. Protective Order for Undue Burden

Plaintiff also seek a protective order because plaintiffs allege that the subpoena issued to Ms. McHenry is overly broad and unduly burdensome. Federal Rule of Civil Procedure 45 states that the court "must quash or modify a subpoena" that "subjects a person to undue burden." FED. R. CIV. P. 45(c)(3)(A)(iv). Similarly, Rule 26© permits the court, for good cause, to issue a protective order to prevent annoyance, embarrassment, or undue burden. FED. R. CIV. P. 26(c)(1).

For motions to quash or requests for a protective order, the court must balance the need of the party seeking discovery against any hardships created by permitting discovery. Lindsay v. C.R. Bard, Inc., Misc. Nos. 1:MC-10-441 & 1:MC-10-442, 2011 WL 240104, at *1 (M.D. Pa. Jan. 24, 2011). The court will consider the following factors: (1) relevance; (2) the requesting party's need; (3) the breadth of the request; and (4) the burden imposed. Id.; Grider v. Keystone Health Plan Cent., Inc., Civ. A. No. 05-MC-40, 2005 WL 2030456, at *7 (M.D. Pa. July 28, 2005).

In considering these factors, the court finds that the Bank's need for the information outweighs the burden on Ms. McHenry. Plaintiffs argue that the Bank has not demonstrated a need for the documents and testimony covered by the subpoena and that the request is not narrowly tailored to relevant material. (Doc. 78 at 5-6). On the contrary, the Bank has clarified the precise issues that it seeks to pursue, and has demonstrated its need for the business records because plaintiffs have not been able to provide the evidence. (Doc. 81 at 14-15). Moreover, the scope of the document request in the subpoena is limited to documents evidencing the

division of property from the divorce, including horses and equipment. (Id. at 14). These requests are clearly relevant to the issue of the decline and current state of the businesses and property.

Finally, Plaintiffs have failed to establish good cause for the issuance of a protective order. The court is authorized to issue a protective order only after the requesting party meets its burden to show that good cause exists for protection of the material at issue. Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995). Good cause is established when the requesting party demonstrates that disclosure will cause a "clearly defined and serious injury." Id. Broad allegations of harm, however, when unsubstantiated with specific examples or clear reasoning, do not establish a showing of good cause. Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786 (3d Cir. 1994). Plaintiffs generally claim that the risk of injury to Ms. McHenry outweighs the Bank's need for the information, and the subpoena is solely designed to harass and embarrass Mr. Dommel and Ms. McHenry. (Doc. 82 at 8-10). This type of broad allegation is insufficient to establish good cause.

## III.  Conclusion

For the foregoing reasons, the court will deny plaintiff's motion to quash and for a protective order (Doc. 77). An appropriate order will issue.

 /S/ CHRISTOPHER C. CONNER
CHRISTOPHER C. CONNER
Chief Judge, Middle District of Pennsylvania

Dated:        September 11, 2013

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DOMMEL PROPERTIES, LLC,** | : | CIVIL ACTION NO. 1:11-CV-02316 |
| **LAND OF BELIEVE FARM, INC.,** | : | |
| **WILLIAM J. DOMMEL, and** | : | |
| **ROBERT W. DOMMEL,** | : | |
| | : | |
| Plaintiffs, | : | (Chief Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| **JONESTOWN BANK AND TRUST** | : | |
| **COMPANY**, *now known as* **JBT**, | : | |
| **LEBANON COUNTY TAX CLAIM** | : | |
| **BUREAU**, **and SALLIE A. NEUIN**, | : | |
| | : | |
| Defendants | : | |

## **ORDER**

AND NOW, this 11th day of September, 2013, upon consideration of plaintiffs' motion to quash and for a protective order (Doc. 77), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The motion to quash and for a protective order (Doc. 77) is DENIED.

2. On or before thirty (30) days from the date of this order, Ms. Denise McHenry shall comply with defendant Jonestown Bank & Trust Company's document requests, and the parties shall forthwith arrange for Ms. McHenry to be deposed pursuant to Federal Rule of Civil Procedure 30, subject to all of Ms. McHenry's other legal rights and privileges.

                                        /S/ CHRISTOPHER C. CONNER
                                        CHRISTOPHER C. CONNER
                                        Chief Judge, Middle District of Pennsylvania